Filed Nov. 30, 1892.

———◆———

No. 703.

## SIMONSON v. THE TOWN OF WEST HARRISON.

TAXES.—*Wrongful Assessment by Municipality.*—*No Statutory Right to Recover Taxes Paid Under.*—There is no statute in this State requiring an incorporated town to refund taxes which were wrongfully assessed and paid. The statutes in force on the subject apply simply to State and county taxes.

SAME.—*Common Law Action.*—*Payment Under Compulsion.*—*Voluntary Payment.*—In order to recover back money from a municipal corporation, under the common law, upon the ground of the illegality of a tax, the payment must have been made upon compulsion, and not voluntarily. Ignorance of the illegality of the assessment at the time of the payment of the tax is insufficient.

From the Dearborn Circuit Court.

*G. M. Roberts* and *C. W. Stapp*, for appellant.

*W. H. Bainbridge*, for appellee.

BLACK, J.—The appellee's demurrer to the appellant's complaint was sustained, and the question as to the sufficiency of the facts pleaded is before us for decision.

In the complaint, which was filed on the 15th of December, 1891, it was shown, in substance, that the appellee was, and for more than ten years had been, an incorporated town, located wholly within the civil township of Harrison, in Dearborn county, Indiana; that the appellant owned, and for ten years had owned, a tract of one hundred and twenty-nine acres of agricultural land, lying in one contiguous body, wholly unimproved, which had not been used for other than agricultural purposes, no part of which had been platted as city or town property, and all of which was, and during said period had been, situated within the corporate limits of said town and also in said civil township; that in the years 1884, 1885, 1886, 1887, 1888, 1889 and 1890 the appellee, without the knowledge or consent of the appellant, for each of said years wrongfully and illegally taxed and levied a tax upon said land, which for all general town purposes was of a higher aggregate percentage upon the appraised value for taxation thereof than the aggregate percentage of the tax levy in said Harrison civil township for general township purpose for the same years respectively; that said land during said time and for each of said years was valued by said town, township and county, for purposes of taxation, at seven thousand dollars. The excess of the rate of percentage at which the land was taxed by the town for general town purposes over the aggregate rate of percentage of the tax levied in the civil township for general township purposes, and the amount of such excess of taxes for each year, were stated in the complaint in detail, the whole amounting to $267.40, which was alleged to be the total amount of tax "so unlawfully levied by defendant for said years as aforesaid, upon said land, in excess of said civil township rate."

It was further alleged that the excess of each of said years

composing said sum, together with the other taxes levied by said town, township and county, "by procurement of the defendant, under the law authorizing the collection of taxes levied by cities and towns to be placed on the county duplicate and collection to be made by the county treasurer, was wrongfully and unlawfully caused to be placed upon the tax duplicate of" said county, for each of said years, with the State, county and other taxes levied and assessed against the appellant, as one sum in gross, without separate column, heading, designation or reference made thereto in any manner; that said duplicate for each of said years was placed, on or before the 31st of December, in the hands of the treasurer of said county, who immediately upon the receipt of the duplicate proceeded to collect for and on behalf of the appellee "the said wrongful, illegal, excessive tax" so placed on the duplicate in each of said years, without separating from the State and county tax the tax so levied by the appellee for general town purposes; that the appellant, "under the mistake of facts hereinafter averred, paid the taxes placed on such duplicate, including such illegal excess, each year, before the same became delinquent, unto said county treasurer, and for all of said years paid to such treasurer said sum of $267.40 of said illegal excess of tax, and said sum was by such treasurer, long before the commencement of this action, paid to the defendant town, and such sum is yet retained by it;" that when he so paid said sum of illegal excess for each of said years, he did so under a mistake as to the facts, in this, that he did not know when such payments or any of them were made, what valuation for purposes of taxation had been placed on said land, or that the appellee, for any of such years, had levied a greater rate of tax for general town purposes upon said land than the aggregate percentage levied in such civil township for general township purposes for such year; nor did he know what rate of tax had been levied by the appellee for any such year for its general town purposes on said land; nor

did he know, at any time, when paying such taxes, nor did said tax duplicate contain any information by which he could be informed, what portion or sum of the taxes charged on such duplicate were the taxes levied by the appellee for general town purposes; nor did he know, nor did said duplicate contain any information by which he could be informed, that any portion of such tax on said duplicate charged was made up of any such illegal tax; and relying upon the correctness of the computations made by the auditor and the treasurer of said county, and upon the correctness of the charge against him on such duplicate, and believing that the appellee had not assessed against said property, for its general town purposes, a greater rate of tax than said rate of taxation in said civil township for township purposes, and being mistaken as to the fact that such greater rate had been levied, he paid said illegal excess of tax for each of said years as aforesaid.

It is further alleged that the appellant did not know or ascertain " said facts above mentioned, or any of them," until the whole of said sum of $267.40 was paid by him and received by the appellee; that upon ascertaining such facts, and before the commencement of this action, he presented to the appellee a claim for the refunding of said wrongful and illegal tax, together with a statement of the facts showing such wrongful assessment and collection of such tax, and demanded of the appellee the refunding of said sum so paid by him, and the appellee " refused and still refuses " to pay or refund said sum to the appellant.    Wherefore, etc.

A statute enacted in 1881 (section 3261, R. S. 1881) provided as as follows : " Lands lying within the limits of any city or incorporated town in this State, that are not platted as city or town property, and are not used for other than agricultural purposes or are wholly unimproved, together with all personal property used for the purpose of farming on such lands, shall not be taxed in such city or town, for all purposes, at a higher aggregate percentage upon the ap-

praised value thereof than the aggregate percentage of the tax levy in the civil township wherein such property is situated: provided, however, That the provisions of this act shall not apply to parcels of land containing less than five acres."

This statute was repealed by an act which took effect March 9, 1891 (Acts of 1891, p. 398), and which contained a proviso that nothing therein contained should affect pending litigation.

This action was commenced after this repeal, but the case is not affected by the repeal. The repealed statute ceased to regulate taxation for the future. The repealing statute did not validate any illegal taxation in the past, and did not repeal or take away any remedy which the tax-payer may have had for the recovery of the amount of illegal taxes paid.

The complaint shows that the appellant paid taxes not authorized by law, the payment of which might have been successfully resisted by him.

We will first examine as to whether there is any statutory remedy for him.

It is provided in relation to cities by a statute of 1867 (section 3157, R. S. 1881) that "the common council may, at any time, order the amount erroneously assessed against and collected from any tax-payer to be refunded to him."

A statute was enacted in 1853, by the first section of which (section 5813, R. S. 1881), it is provided as follows:

" In all cases where any person or persons or body politic or corporate, shall appear before the board of commissioners of any county in this State, and establish, by proper proof, that such person or body politic or corporate has paid any amount of taxes which were wrongfully assessed against such person or body politic or corporate in such county, it shall be the duty of said board to order the amount, so proved to have been paid to be refunded to said payer from the county treasury, so far as the same was assessed and paid for county taxes."

The next section of this statute (section 5814, R. S. 1881), provides for the certifying by the county board to the auditor of state of the amount of taxes wrongfully assessed and paid for State purposes, etc.

The third section of this statute (section 5815, R. S. 1881), provides for an appeal from the board of county commissioners " refusing to hear such complaint."

We are not acquainted with any statute directing such a refunding upon application made to an incorporated town, or providing for an action against the town to enforce repayment of taxes wrongfully or illegally assessed and paid, and the appellant confesses his inability to point out such a statute.

In 1875 a statute containing three sections was enacted (Acts 1875, p. 148, 1 R. S. 1876, p. 338), with the following title : "An act legalizing the assessment, equalization, levy and collection of municipal taxes for the years 1873 and 1874, providing that the general law governing State and county taxation, so far as the same provides for the manner and time of making the assessment and collection of taxes, shall apply to incorporated cities and towns, and declaring an emergency."

The first section of this statute is as follows:    " Whereas, there is no express provision in the act approved December 21st, 1872, entitled 'An act to provide for a uniform assessment of property, and the collection and return of taxes thereon,' that makes the same applicable to incorporated cities and towns; and whereas, the general law governing cities, approved March 14th, 1867, for the incorporation of cities, provides a different time, mode and manner for the assessment, equalization, levy and collection of taxes by cities, owing to which uncertainty of application, some cities have acted under the one and other cities under the other law, so that the assessment, levy and collection have not been uniform ; therefore, be it enacted," etc.

The second section is as follows:    " Hereafter the gen-

Simonson *v.* The Town of West Harrison.

eral law of the State, and amendments thereto, approved December 2d, 1872, for the uniform assessment of taxes, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable : provided, That all city taxes shall be paid on or before the third Monday in April in each year.

In 1881 a statute was enacted to amend sections 1 and 2 of said act of 1875. The second section of this statute of 1881 (Acts of 1881, p. 697, section 3263, R. S. 1881) provides for the amendment of the second section of said act of 1875 so as to read as follows : " Hereafter all general laws of the State for the uniform assessment and collection of taxes, and matters connected therewith or growing out of the same, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable : provided, That all city taxes not paid on or before the third Monday of April in each year shall then become delinquent : provided, further, That nothing herein contained shall be held or construed to prevent cities from exercising their discretion as to making assessments by city assessors instead of by county commissioners."

It is contended that this statute of 1875, as amended in 1881, and the above-mentioned statute of 1853, operate together to sustain such an action as this.

We find ourselves unable to agree with the appellant in this proposition.

The statute of 1853 provides for a particular proceeding. It authorizes an application to the board of county commissioners whereby the tax-payer who has paid taxes which were wrongfully assessed against him in the county may obtain a refunding of the amount paid for county taxes and the amount paid for State purposes. To secure the benefit of this statutory remedy it must be strictly pursued. The statute which provides it can not properly be said to be ap-

plicable to an ordinary common law action such as the one resorted to by the appellant.

When the second section of the act of 1875, as amended in 1881, is considered in connection with all the other portions of the statute, including its title, it can not be concluded that it was the intention of the Legislature thereby to so extend the meaning and effect of the statute of 1853 as to make it provide for a common law action against a town for the recovery of money paid for taxes illegally imposed.

If it be said that there would be as much justice and equity in providing for the refunding of wrongfully assessed taxes paid to an incorporated town as in making such provision in relation to county and State taxes, it must be answered that this is a matter for the Legislature rather than the courts.

If, under the circumstances of the case, there could be no recovery of the amounts paid for county taxes without a statute, then a statute must be shown to authorize an action for the recovery of taxes paid to a town.

We will next consider whether the complaint shows a right of action at common law. The pleader has sought to show that the wrongful excess of taxes was paid through mistake or ignorance of fact.

In Dillon Mun. Corp., section 940, it is said: "Actions against a municipal corporation to recover back money upon the ground of the illegality of the tax or assessment are, upon principle and the weight of authority, maintainable when, and in general only when, the following requisites co-exist: 1. The authority to levy the tax, or to levy it upon the property in question, must be wholly wanting, or the tax itself wholly unauthorized, in which cases the assessment is not simply irregular, but absolutely void. 2. The money sued for must have been actually received by the defendant corporation, and received by it for its own use, and not as an agent or instrument to assess and collect money for the benefit of the State, or other public corporation or person. And

3. The payment by the plaintiff must have been made upon compulsion, to prevent the immediate seizure of his goods or the arrest of the person, and not voluntarily."

The cases wherein money voluntarily paid to a corporation for an illegal tax, without any coercion, may be recovered back on the ground of mistake of fact are few. In Cooley Taxation, 809, it is said: " That a tax voluntarily paid can not be recovered back, the authorities are generally agreed. * * * Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he can not afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back. Especially is this the case when the officer receiving the money, who is chargeable with no more knowledge of the law than the party making payment, is not put on his guard by any warning or protest, and the money is paid over to the use of the public in apparent acquiescence in the justice of the exaction. Mistake of fact can scarcely exist in such a case, except in connection with negligence, as the illegalities which render such a demand a nullity must appear from the records, and the tax-payer is just as much bound to inform himself what the records show, or do not show, as are the public authorities. The rule of law is a rule of sound public policy also ; it is a rule of quiet as well as of good faith, and precludes the courts being occupied in undoing the arrangements of parties which they have voluntarily made, and into which they have not been drawn by fraud or accident, or by any excusable ignorance of their legal rights and liabilities."

What the appellant has stated as his mistakes can scarcely be said to amount to more than an allegation that he was ignorant of any illegality in the assessment and believed it to be legal.

He was paying money to a public officer to be by him placed in the public treasury for public uses. It would be contrary to sound policy to permit him afterward to so set

up his ignorance concerning the character of the transaction for the purpose of reclaiming the money thus voluntarily paid.

The judgment is affirmed.

Filed Nov. 29, 1892.